**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SS&C TECHNOLOGIES, INC.; SS&C TECHNOLOGIES HOLDINGS, INC.; and DST HEALTH SOLUTIONS, LLC,

Plaintiffs,

v.

MCS HEALTHCARE HOLDINGS, LLC and MEDICAL CARD SYSTEM, INC.,

Defendants.

Case No. ________________

**DECLARATION OF CHRISTMAN RICE**

I, Christman Rice, declare:

1. I am an attorney duly licensed to practice before this Court and all courts in the State of New York. I am a partner of the law firm BraunHagey & Borden LLP, counsel of record for Plaintiffs SS&C Technologies, Inc.; SS&C Technologies Holdings, Inc.; and DST Health Solutions, LLC (collectively, "SS&C" or "Plaintiffs") in the above-captioned action. I make this declaration on facts within my personal knowledge and if called upon to testify, I could and would testify completely thereto.

2. Attached hereto as Exhibit A is a true and correct copy of a letter dated September 8, 2026, from SS&C to MCS Healthcare Holdings, LLC ("MCS") providing MCS notice of breach of the Perpetual Source Code Licensing Agreement between MCS and DST Health Solutions, LLC d/b/a SS&C Health, dated June 30, 2025.

3. Attached hereto as Exhibit B is a true and correct copy of a letter dated September 12, 2026, from Daniel R. Cellucci of Kirkland & Ellis LLP, counsel for MCS, to SS&C, together with the exhibits enclosed with that letter.

4. Attached hereto as Exhibit C is a true and correct copy of a letter dated September 16, 2026, that I sent on behalf of SS&C to Mr. Cellucci, together with the enclosures to that letter.

5. Attached hereto as Exhibit D is a true and correct copy of a letter dated September 22, 2026, from Daniel R. Cellucci of Kirkland & Ellis LLP, counsel for MCS, to SS&C.

6. Attached hereto as Exhibit E is a true and correct copy of email correspondence between me and Daniel R. Cellucci of Kirkland & Ellis LLP, counsel for MCS, regarding the instant matter.

7. Attached hereto as Exhibit F is a true and correct copy of proposed Requests for Production to be sent to Defendants.

8. Attached hereto as Exhibit G is a true and correct copy of proposed Interrogatories to be sent to Defendants.

I declare under penalty of perjury under the laws of the United States and all applicable state law that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 25, 2026

*/s/ Christman Rice*
Christman Rice

# EXHIBIT A - FILED UNDER SEAL

# EXHIBIT B - FILED UNDER SEAL

# EXHIBIT C - FILED UNDER SEAL

# EXHIBIT D - FILED UNDER SEAL

# EXHIBIT E - FILED UNDER SEAL

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SS&C TECHNOLOGIES, INC.; SS&C TECHNOLOGIES HOLDINGS, INC.; and DST HEALTH SOLUTIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MCS HEALTHCARE HOLDINGS, LLC and MEDICAL CARD SYSTEM, INC.,<br><br>Defendants. | Case No. ________<br><br>**PLAINTIFFS' FIRST SET OF EXPEDITED REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs SS&C Technologies, Inc., SS&C Technologies Holdings, Inc., and DST Health Solutions, LLC hereby demand that Defendants MCS Healthcare Holdings, LLC and Medical Card System, Inc., respond in writing to the following Requests for Production and produce the documents requested below for inspection and copying at the law offices of BraunHagey & Borden LLP, 200 Madison Avenue, 23rd Floor, New York, New York 10016, or by secure electronic transfer to Plaintiffs' counsel, within seven days after service or such other time as the Court orders.

**DEFINITIONS**

The following definitions apply to each Request below, whether or not the defined term is capitalized.

1. "Action" means the above-captioned action.

2. "Agreement" means the Perpetual Source Code Licensing Agreement executed on or about June 30, 2025 between MCS Healthcare Holdings, LLC and DST Health Solutions, LLC d/b/a SS&C Health, including all exhibits, schedules, orders, and amendments.

3. "Confidential Information" has the meaning set forth in Section 1.4 of the Agreement.

4. "Documentation" has the meaning set forth in Section 1.5 of the Agreement.

5. "SS&C" means Plaintiffs SS&C Technologies, Inc., SS&C Technologies Holdings, Inc., and DST Health Solutions, LLC (d/b/a SS&C Health); each of their present and former parents, subsidiaries, affiliates, divisions, predecessors in interest (including DST Systems, Inc., now known as SS&C GIDS, Inc.), and successors; and each of their present and former officers, directors, employees, and agents.

6. "SS&C Information" means any information, in any form, that refers or relates to SS&C, including: (a) the Agreement, and their terms, pricing, negotiation, and performance; (b) the Software; (c) Confidential Information and Documentation; (d) any other SS&C product, platform, or service, including AMISYS Advance and DomaniRx; (e) SS&C's relationship and dealings with MCS, including support, maintenance, invoicing, and transition planning; (f) SS&C's consent, or refusal to consent, to the Proposed Sale; and (g) the dispute between SS&C and MCS, including this Action.

7. "Software" has the meaning set forth in Section 1.15 of the Agreement, including the PowerMHS, Electronic Commerce Module, DRG Grouper Interface, and ClaimsXten Interface software, and further includes: (a) all Source Code, Object Code, executables, databases, database schemas, data models, business rules, configurations, tables, user interfaces, screens, reports, and workflows of that software; (b) all enhancements, modifications, and derivatives of that software; (c) all Documentation; and (d) any MCS system, application, or environment that incorporates, runs, interfaces with, or is derived from any of the foregoing.

8. "MCS," "You," and "Your" mean Defendants MCS Healthcare Holdings, LLC and Medical Card System, Inc.; each of their present and former direct and indirect parents (including KCF Holdings, Inc. and MHH Healthcare, L.P.), subsidiaries, and affiliates; and each of their

present and former partners, officers, directors, employees, agents, representatives, investment bankers, financial advisors, consultants, attorneys, or other persons acting under their control or behalf.

9. "MedImpact" means MedImpact Healthcare Systems, Inc. and MedImpact Holdings, Inc.; each of their present and former parents, subsidiaries, affiliates, equity sponsors, and financing sources; and each Person acting or purporting to act on behalf of any of them, including any partners, officers, directors, employees, agents, representatives, consultants, attorneys, or other persons acting under their control or behalf.

10. "Proposed Sale" means the proposed acquisition of MCS, or of any direct or indirect parent of MCS (including KCF Holdings, Inc.), by MedImpact, and any related, modified, or successor transaction.

11. "Transaction" means the Proposed Sale and any other actual or contemplated sale, merger, acquisition, investment, recapitalization, or change of control involving MCS or any direct or indirect parent of MCS that was discussed, proposed, or evaluated at any time during the Relevant Period.

13. "Potential Counterparty" means any Person other than MCS that has considered, evaluated, bid on, or negotiated any Transaction, including MedImpact.

14. "Deal Participant" means any Potential Counterparty, and any Person acting for or on behalf of MCS or any Potential Counterparty in connection with any Transaction, including any investment banker, financial advisor, lender or prospective lender, financing source, accountant, consultant, technology or information-technology diligence provider, insurer (including any representations-and-warranties insurer), Data Room provider, or attorney.

15. "Diligence" means any due diligence, investigation, review, evaluation, or analysis of MCS or its business, operations, finances, contracts, technology, systems, or assets conducted by or for any Deal Participant in connection with any Transaction, including through any Data Room, request list, question-and-answer process, management presentation, meeting, call, videoconference, Site Visit, or Demonstration.

16. "Data Room" means any virtual data room, electronic data site, file-transfer or file-sharing platform, or other repository through which any Document or information was made available to any Deal Participant in connection with any Transaction.

12. "Communication" means any transmission of information by any means, including email, text or instant message (including communications made via Zoom, Microsoft Teams, Slack, WhatsApp, Signal, Telegram, Google Chat, Google Voice, and any other digital platform that allows the transmission of a message), Data Room message or question-and-answer entry, letter, memorandum, meeting, telephone call, or videoconference.

13. "Document" has the full meaning of "documents or electronically stored information" under Federal Rule of Civil Procedure 34(a)(1), and includes every draft and non-identical copy and, for documents maintained in electronic form, all metadata associated with that document.

14. "Identify" means: (a) for a natural person, to state the person's full name, employer, title, and business address; (b) for an entity, to state its full name and principal place of business; (c) for a Document, to state its type, date, author, recipients, title or subject, and Bates number if produced; and (d) for a Communication, to state its date, mode, participants, and substance.

15. "Person" means any natural person or any business, legal, or governmental entity or association.

16. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

17. “Relevant Period” means October 1, 2024 through the date of Your response, unless a Request states otherwise.

18. The terms “and” and “or” shall be construed conjunctively or disjunctively as necessary to bring within the scope of a Request all responses that might otherwise be construed to be outside its scope; “any” and “all” each mean “any and all”; “including” means “including without limitation”; the singular includes the plural and vice versa; and the use of any tense of a verb includes all other tenses.

## INSTRUCTIONS

1. These Requests call for all responsive Documents in Your possession, custody, or control, including Documents held by Your officers, directors, employees, agents, investment bankers, financial advisors, consultants, attorneys, and any Data Room provider acting on Your behalf.

2. For any Document that was made available in a Data Room to any Person other than MCS, produce that Document in the form in which it was made available in the Data Room, together with the Document’s Data Room index number and folder location.

3. Produce spreadsheets, presentations, audio and video recordings, and Data Room indices, access reports, and activity logs in native format. Produce all other electronically stored information as text-searchable single-page TIFF or PDF images with document-level extracted text and a load file carrying standard metadata (including custodian, author, from, to, cc, bcc, subject, file name, date created, date modified, date sent, and hash value), with family relationships preserved.

4. Under Federal Rule of Civil Procedure 34(b)(2)(B)–(C), for each Request, state whether You will produce the requested Documents, state the grounds for any objection with specificity, and state whether any responsive materials are being withheld on the basis of that objection.

5. If You withhold any Document or portion of a Document on the basis of privilege or work-product protection, expressly make the claim and describe the nature of the Document withheld as required by Federal Rule of Civil Procedure 26(b)(5)(A). Produce any non-privileged portion of a Document with the privileged portion redacted and the redaction marked.

6. If any responsive Document has been lost, discarded, or destroyed, Identify the Document, state the date and circumstances of its loss or destruction, and Identify each Person with knowledge of those circumstances.

7. SS&C Information is SS&C's own information. The confidentiality of SS&C Information is not a basis to withhold it from SS&C.

8. These Requests are continuing. You must supplement or correct Your responses and production as required by Federal Rule of Civil Procedure 26(e)(1).

## **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications Concerning SS&C or the Agreement that were disclosed to any Person other than MCS during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications Concerning SS&C, the Agreement, the Software, or SS&C's consent in relation to the Proposed Sale or any Transaction involving the purchase of MCS during the Relevant Period, including any term sheet, letter of intent, indication of interest, exclusivity agreement, or other preliminary agreement.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents sufficient to show all locations in which MCS has stored, copied, preserved, maintained, or disclosed the Software or any portion thereof during the Relevant Period, including any Data Rooms.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications Identified in, referred to in, or relied on in preparing Your answers to Plaintiffs' First Set of Expedited Interrogatories.

Dated: September 25, 2026
New York, New York

BRAUNHAGEY & BORDEN LLP

By: *<u>/s/ Christman Rice</u>*

Christman Rice
Marissa R. Benavides
Seth Massey
Samuel Libby
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089
rice@braunhagey.com

*Attorneys for Plaintiffs*

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SS&C TECHNOLOGIES, INC.; SS&C TECHNOLOGIES HOLDINGS, INC.; and DST HEALTH SOLUTIONS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MCS HEALTHCARE HOLDINGS, LLC and MEDICAL CARD SYSTEM, INC.,<br><br>Defendants. | Case No. ________<br><br>**PLAINTIFFS' FIRST SET OF EXPEDITED INTERROGATORIES** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs SS&C Technologies, Inc., SS&C Technologies Holdings, Inc., and DST Health Solutions, LLC ("SS&C") hereby demand that Defendants MCS Healthcare Holdings, LLC and Medical Card System, Inc. ("MCS") answer the following Interrogatories separately and fully, in writing and under oath, and serve their answers on BraunHagey & Borden LLP, 200 Madison Avenue, 23rd Floor, New York, New York 10016, within seven days after service or such other time as the Court orders.

## DEFINITIONS

The following definitions apply to each Interrogatory below, whether or not the defined term is capitalized.

1. "Action" means the above-captioned action.
2. "Agreement" means the Perpetual Source Code Licensing Agreement executed on or about June 30, 2025 between MCS Healthcare Holdings, LLC and DST Health Solutions, LLC d/b/a SS&C Health, including all exhibits, schedules, orders, and amendments.
3. "Confidential Information" has the meaning set forth in Section 1.4 of the Agreement.
4. "Documentation" has the meaning set forth in Section 1.5 of the Agreement.

5. "SS&C" means Plaintiffs SS&C Technologies, Inc., SS&C Technologies Holdings, Inc., and DST Health Solutions, LLC (d/b/a SS&C Health); each of their present and former parents, subsidiaries, affiliates, divisions, predecessors in interest (including DST Systems, Inc., now known as SS&C GIDS, Inc.), and successors; and each of their present and former officers, directors, employees, and agents.

6. "SS&C Information" means any information, in any form, that refers or relates to SS&C, including: (a) the Agreement, and their terms, pricing, negotiation, and performance; (b) the Software; (c) Confidential Information and Documentation; (d) any other SS&C product, platform, or service, including AMISYS Advance and DomaniRx; (e) SS&C's relationship and dealings with MCS, including support, maintenance, invoicing, and transition planning; (f) SS&C's consent, or refusal to consent, to the Proposed Sale; and (g) the dispute between SS&C and MCS, including this Action.

7. "Software" has the meaning set forth in Section 1.15 the Agreement, including the PowerMHS, Electronic Commerce Module, DRG Grouper Interface, and ClaimsXten Interface software, and further includes: (a) all Source Code, Object Code, executables, databases, database schemas, data models, business rules, configurations, tables, user interfaces, screens, reports, and workflows of that software; (b) all enhancements, modifications, and derivatives of that software; (c) all Documentation; and (d) any MCS system, application, or environment that incorporates, runs, interfaces with, or is derived from any of the foregoing.

8. "MCS," "You," and "Your" mean Defendants MCS Healthcare Holdings, LLC and Medical Card System, Inc.; each of their present and former direct and indirect parents (including KCF Holdings, Inc. and MHH Healthcare, L.P.), subsidiaries, and affiliates; and each of their present and former partners, officers, directors, employees, agents, representatives, investment

bankers, financial advisors, consultants, attorneys, or other persons acting under their control or behalf.

9. "MedImpact" means MedImpact Healthcare Systems, Inc. and MedImpact Holdings, Inc.; each of their present and former parents, subsidiaries, affiliates, equity sponsors, and financing sources; and each Person acting or purporting to act on behalf of any of them, including any partners, officers, directors, employees, agents, representatives, consultants, attorneys, or other persons acting under their control or behalf.

10. "Proposed Sale" means the proposed acquisition of MCS, or of any direct or indirect parent of MCS (including KCF Holdings, Inc.), by MedImpact, for which MCS requested SS&C's consent on or about August 5, 2026, and any related, modified, or successor transaction.

11. "Proposed Sale Timeline" means each of the following dates: (a) the date on which Diligence by or for MedImpact began; (b) the date on which any term sheet, letter of intent, or similar document Concerning the Proposed Sale was signed; (c) the date on which Diligence by or for MedImpact concluded; (d) the date on which any financing agreement in connection with the Proposed Sale was signed; (e) the date on which a definitive agreement for the Proposed Sale is expected to be signed; (f) the date on which any regulatory filing in connection with the Proposed Sale was filed or is expected to be filed; and (g) the date on which the Proposed Sale is expected to close.

12. "Transaction" means the Proposed Sale and any other actual or contemplated sale, merger, acquisition, investment, recapitalization, or change of control involving MCS or any direct or indirect parent of MCS that was discussed, proposed, or evaluated at any time during the Relevant Period.

13. "Potential Counterparty" means any Person other than MCS that has considered, evaluated, bid on, or negotiated any Transaction, including MedImpact.

14. "Deal Participant" means any Potential Counterparty, and any Person acting for or on behalf of MCS or any Potential Counterparty in connection with any Transaction, including any investment banker, financial advisor, lender or prospective lender, financing source, accountant, consultant, technology or information-technology diligence provider, insurer (including any representations-and-warranties insurer), Data Room provider, or attorney.

15. "Diligence" means any due diligence, investigation, review, evaluation, or analysis of MCS or its business, operations, finances, contracts, technology, systems, or assets conducted by or for any Deal Participant in connection with any Transaction, including through any Data Room, request list, question-and-answer process, management presentation, meeting, call, videoconference, Site Visit, or Demonstration.

16. "Data Room" means any virtual data room, electronic data site, file-transfer or file-sharing platform, or other repository through which any Document or information was made available to any Deal Participant in connection with any Transaction.

17. "Site Visit" means any in-person visit by any Deal Participant, other than MCS's own officers and employees, to any office, facility, data center, or other premises of MCS or at which any MCS system is kept or used.

18. "Demonstration" means any display, walkthrough, screen-share, presentation, or other exhibition, whether in person or remote, of any MCS system, application, workflow, or process—including any claims-processing, adjudication, enrollment, eligibility, provider, or information-technology system—to any Deal Participant.

19. "Communication" means any transmission of information by any means, including email, text or instant message (including communications made via Zoom, Microsoft Teams, Slack, WhatsApp, Signal, Telegram, Google Chat, Google Voice, and any other digital platform that allows the transmission of a message), Data Room message or question-and-answer entry, letter, memorandum, meeting, telephone call, or videoconference.

20. "Document" has the full meaning of "documents or electronically stored information" under Federal Rule of Civil Procedure 34(a)(1), and includes every draft and non-identical copy, and, for documents maintained in electronic form, all metadata associated with that document.

21. "Identify" means: (a) for a natural person, to state the person's full name, employer, title, and business address; (b) for an entity, to state its full name and principal place of business; (c) for a Document, to state its type, date, author, recipients, title or subject, and Bates number if produced; and (d) for a Communication, to state its date, mode, participants, and substance.

22. "Person" means any natural person or any business, legal, or governmental entity or association.

23. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

24. "Relevant Period" means October 1, 2024 through the date of Your response, unless an Interrogatory states otherwise.

25. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of an Interrogatory all responses that might otherwise be construed to be outside its scope; "any" and "all" each mean "any and all"; "including" means "including without limitation"; the singular includes the plural and vice versa; and the use of any tense of a verb includes all other tenses.

## INSTRUCTIONS

1. Each Defendant must answer each Interrogatory separately and fully in writing under oath. Defendants may serve joint answers only if each Defendant separately verifies them and the answers identify any respect in which the information differs between Defendants.

2. These Interrogatories call for all information available to You, including information in the possession of Your officers, directors, employees, agents, investment bankers, financial advisors, consultants, attorneys, and any Data Room provider acting on Your behalf.

3. If You cannot answer any Interrogatory fully after a diligent inquiry, answer to the fullest extent possible, state why You cannot answer the remainder, and state all information You have Concerning the unanswered portion.

4. Under Federal Rule of Civil Procedure 33(b)(4), state the grounds for any objection with specificity, and answer every portion of the Interrogatory to which You do not object.

5. If You withhold any information on the basis of privilege or work-product protection, expressly make the claim and describe the nature of the information withheld as required by Federal Rule of Civil Procedure 26(b)(5)(A).

6. If You answer any Interrogatory by reference to business records under Federal Rule of Civil Procedure 33(d), specify the records by Bates number in sufficient detail to enable Plaintiffs to locate and identify them as readily as You could. A complete native export of a Data Room's index and access or activity reports, produced with Bates numbers, is an acceptable means of answering Interrogatory No. 5 in part.

7. SS&C Information is SS&C's own information. The confidentiality of SS&C Information is not a basis to withhold it from SS&C.

8. These Interrogatories are continuing. You must supplement or correct Your answers as required by Federal Rule of Civil Procedure 26(e)(1).

## INTERROGATORIES

**INTERROGATORY NO. 1:**

State each date in the Proposed Sale Timeline, whether completed or anticipated, and for each, state whether the date is actual or anticipated.

**INTERROGATORY NO. 2:**

For each term sheet, letter of intent, indication of interest, exclusivity agreement, or other preliminary agreement Concerning the Proposed Sale that has been exchanged or executed, Identify its parties and signatories, and state whether it refers to SS&C, the Agreement, the Software, or SS&C's consent.

**INTERROGATORY NO. 3:**

Identify all SS&C Information that has been discussed with, disclosed to, made available to, displayed to, or described to any Deal Participant, and for each item state: (a) its substance; (b) the date of the disclosure; (c) the manner of the disclosure (for example, through a Data Room, email, call, meeting, management presentation, question-and-answer process, Site Visit, or Demonstration); (d) the Person who made the disclosure; and (e) each Person who received it.

**INTERROGATORY NO. 4:**

Identify each Site Visit by date, location, purpose, and attendees, including each attendee's employer and title; state whether any system, workflow, or Software was displayed, demonstrated, or accessed; and Identify each Document shown or distributed.

**INTERROGATORY NO. 5:**

Identify every Document referencing SS&C, the Agreement, and/or the Software that has been provided or identified to any Deal Participant in connection with Diligence, and for each,

state its index number, title or file name, folder location, and the date it was uploaded or provided, and Identify each Person who viewed or downloaded it.

**INTERROGATORY NO. 6:**

Identify all locations in which MCS has stored, copied, preserved, maintained, or disclosed the Software or any portion thereof during the Relevant Period, including any Data Rooms.

Dated: September 25, 2026
New York, New York

BRAUNHAGEY & BORDEN LLP

By: *<u>/s/ Christman Rice</u>*

Christman Rice
Marissa R. Benavides
Seth Massey
Samuel Libby
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089
rice@braunhagey.com

*Attorneys for Plaintiffs*