UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SS&C TECHNOLOGIES, INC.; SS&C TECHNOLOGIES HOLDINGS, INC.; and DST HEALTH SOLUTIONS, LLC,

Plaintiffs,

v.

MCS HEALTHCARE HOLDINGS, LLC; and MEDICAL CARD SYSTEM, INC.,

Defendants.

26-cv-8577 (JSR)

OPINION DENYING MOTION FOR PRELIMINARY INJUNCTION

JED S. RAKOFF, U.S.D.J.

On November 6, 2026, this Court issued a "bottom-line" Order denying plaintiffs' motion for a preliminary injunction. See ECF No. 59. This Opinion sets forth the reasons for that Order.

## I. Background

Plaintiffs SS&C Technologies, Inc., SS&C Technologies Holdings, Inc., and DST Health Solutions, LLC (collectively, "SS&C") own a software platform for medical-claims processing called PowerMHS. See ECF No. 8-1 ("Dargati Decl.") ¶ 4. Plaintiffs previously licensed PowerMHS to health plans, including to defendants MCS Healthcare Holdings, LLC and Medical Card System, Inc. (collectively, "MCS"), a managed care organization that

offers Medicare Advantage and commercial health insurance plans in Puerto Rico. See ECF No. 28 ("O'Drobinak Decl.") ¶ 5.

In October 2024, plaintiffs informed defendants that they planned to sunset PowerMHS and transition clients to a new software. See ECF No. 27 ("Goitia Decl.") ¶ 9. Because defendants had dedicated significant time and resources to customizing PowerMHS, defendants did not want to transition to plaintiffs' new software. See O'Drobinak Decl. ¶ 10.

On June 30, 2025, the parties entered into a licensing agreement (the "Perpetual Source Code Licensing Agreement") under which defendant MCS Healthcare Holdings, LLC ("MCS Healthcare") agreed to pay plaintiff DST Health Solutions LLC ("DST") $3.5 million in exchange for a "perpetual limited, nonexclusive, revocable . . ., non-sublicensable, nontransferable license to [u]se" PowerMHS. ECF No. 1 ("Compl.") Ex. A at 2. The agreement prohibited MCS Healthcare from "disclos[ing DST's] Confidential Information" – defined broadly as "all Software, Documentation, information, data, drawings, specifications, trade secrets, . . . and Source Code relating to the Software" – "without [DST's] prior written consent." Id. at 1, 8. DST and MCS Healthcare agreed that "any violation or threatened violation" of the confidentiality provision "will cause irreparable injury to the other party for which monetary damages would not be an adequate remedy and that each party will be entitled to obtain injunctive

relief." Id. at 11. The agreement further required MCS Healthcare to obtain DST's "prior written consent" to an assignment or transfer of "th[e a]greement" or "any rights under th[e a]greement," provided plaintiff did not "unreasonably withh[o]ld" its consent. Id. at 9.

In early 2026, MCS Healthcare's indirect parent company, KCF Holdings, Inc. ("KCF"), began exploring an acquisition by MedImpact Healthcare Systems, Inc. ("MedImpact") of "all outstanding equity interests in KCF." ECF No. 29 ("Martinez Decl.") ¶ 6. Defendants aver that, consistent with their obligations under the Perpetual Source Code Licensing Agreement, they "never disclosed to MedImpact or its advisors" any of plaintiffs' software, source code, object code, internal architecture and logic, business rules, database design, or documentation. Id. ¶ 21; see Goitia Decl. ¶ 14; O'Drobinak Decl. ¶ 32 ("[N]one of DST's alleged proprietary and trade secret information entered the diligence process.").

In August 2026, defendants informed plaintiffs of the proposed sale and sought plaintiffs' consent. See Dargati Decl. ¶ 19. One month later, plaintiffs informed defendants that they would consent to the transaction if defendants paid plaintiffs an additional $3.5 million fee. See O'Drobinak Decl. ¶¶ 26-27;

Dargati Decl. ¶ 22. Defendants did not make a counteroffer. See Dargati Decl. ¶ 22.

On September 30, 2026, plaintiffs filed the instant action, alleging that defendants breached the Perpetual Source Code Licensing Agreement and misappropriated plaintiffs' trade secrets by disclosing those secrets to MedImpact during acquisition diligence. See generally Compl. Plaintiffs filed the motion for a preliminary injunction before this Court on the same day, seeking an order preliminarily enjoining defendants from disclosing plaintiffs' confidential information (as defined in the Perpetual Source Code Licensing Agreement) and from consummating an acquisition without plaintiffs' prior written consent. See ECF No. 7. After the parties briefed the plaintiffs' motion, the Court held oral argument and issued a "bottom-line" Order denying the motion. See ECF No. 59. The analysis that follows explains that Order.

## II. Analysis

A preliminary injunction is an "extraordinary remedy." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). To obtain a preliminary injunction, plaintiffs must demonstrate "a likelihood of success on the merits," "a likelihood of irreparable injury in the absence of an injunction," "that the balance of hardships tips in the plaintiff[s'] favor," and "that the public interest would not be disserved by the issuance of an

injunction." Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks omitted).

**A. Likelihood of Success on the Merits**

Plaintiffs move for a preliminary injunction in connection with their claims for breach of contract and misappropriation of trade secrets.[1] The Court concludes that plaintiffs have not demonstrated a likelihood of success on those claims.

**1. Breach of Contract (Count One)**

Plaintiffs assert two theories of breach of contract. See Compl. ¶¶ 71-75; ECF No. 8 ("Mem. in Support") at 9. First, plaintiffs argue that defendants "violat[ed] or threatened [to] violat[e]" the confidentiality provisions in the Perpetual Source Code Licensing Agreement, constituting a breach of that agreement. Mem. in Support at 9 (internal quotation marks omitted). In particular, plaintiffs assert, defendants either "disclosed" during acquisition diligence "or will soon disclose . . . Confidential Information to intermediaries of MedImpact." Id. at 10. Second, plaintiffs argue that the proposed sale "would violate the [Perpetual Source Code Licensing] Agreement's anti-assignment provision." Id. at 9.

[1] Plaintiffs also allege three purported claims for declaratory judgment under 28 U.S.C. § 2201. See Compl. ¶¶ 90-103. "Requests for . . . declaratory judgment are not claims for relief within the meaning of Rule 8(a)" of the Federal Rules of Civil Procedure. Guggenheim v. McDonald, 2026 WL 1075924, at *2 (S.D.N.Y. Apr. 20, 2026).

Plaintiffs are not likely to succeed on either theory. Plaintiffs speculate that defendants breached the confidentiality provisions because disclosure of confidential information pertaining to PowerMHS would have been a standard part of any acquisition diligence process and "multiple media outlets . . . reported [that] MedImpact was closing in on obtaining over $2B in financing to support its acquisition of MCS." Id. at 10. Plaintiffs further argued at oral argument that defendants must have disclosed plaintiffs' confidential information because defendants aver only that they did not disclose plaintiffs' software, source code, and documentation. But aside from the fact that defendants actually aver that no confidential information was disclosed, see O'Drobinak Decl. ¶¶ 31-32, plaintiffs would ask this Court to infer from defendants' declaration about information they did not disclose that defendants disclosed everything else. Plaintiffs provide no non-speculative evidence that defendants disclosed confidential information to MedImpact. See, e.g., Berardi v. Berardi, 2023 WL 1795797, at *10-11 (N.D.N.Y. Feb. 7, 2023).

"[I]n any event," plaintiffs reply, "even 'threatened' disclosure is a breach." ECF No. 46 ("Reply") at 7 (citing § 6.7.15 of the Perpetual Source Code Licensing Agreement). Section 6.7.15 states:

> Injunctive Relief. Both parties agree that any violation or threatened violation of Sections 2.2, 2.3, or 2.4, Section 6.3 ("Confidential Information") and Section 6.7.10 (No Solicitation) of this Agreement will cause irreparable injury to the other party for which monetary damages would not be an adequate remedy and that each party will be entitled to obtain injunctive relief (without the necessity of posting a bond) in addition to any other damages or equitable relief for any breach of the above.

Compl. Ex. A at 11. Section 6.7.15 plainly describes remedies, contemplating that injunctive relief is available for a threatened breach, not that a threatened breach is itself a breach of the agreement.

Moreover, as for plaintiffs' theory that defendants breached the agreement because the proposed sale violates § 6.5 of the agreement (the anti-assignment provision), see id. ¶ 74, plaintiffs do not dispute that the proposed sale has not yet occurred, see Mem. in Support at 11-12. A claim that defendants "may possibly breach the [a]greement in the future" is "nothing more than unripe speculation." Advanced Glob. Tech., LLC v. XM Satellite Radio, Inc., 2007 WL 3196208, at *3 (S.D.N.Y. Oct. 29, 2007). "Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time in the future." Id. (internal quotation marks omitted).

For these reasons and on this record, plaintiffs fail to demonstrate that defendants breached the Perpetual Source Code

Licensing Agreement and thus do not show a likelihood of success on the merits of their breach-of-contract claim.

**2. Misappropriation of Trade Secrets (Counts Two and Three)**

Plaintiffs also assert claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., and New York common law, alleging that defendants disclosed plaintiffs' trade secrets to MedImpact during the diligence process for the proposed sale, see Compl. ¶¶ 82, 89. Under both the DTSA and New York law, "a plaintiff must prove that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." SS&C Techs. Holdings, Inc. v. Arcesium LLC, 2026 WL 3318407, at *4 (2d Cir. Nov. 3, 2026); see id. at *3 n.4. "A [plaintiff] bears the burden of identifying a purported trade secret with sufficient specificity." Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., 68 F.4th 792, 800 (2d Cir. 2023). "The specificity requirement places a defendant on notice of the bases for the claim being made against it and allows a factfinder to determine whether certain information is, in fact, a trade secret." Id. (cleaned up).

Here, plaintiffs identify the "proprietary internal architecture and logic, business rules, and database design underlying PowerMHS, and the technical documentation detailing or describing the platform's internal architecture, business

logic, and other key aspects" as trade secrets. Mem. in Support at 13 (citing Dargati Decl. ¶¶ 6, 10); see also Compl. ¶¶ 18-19, 77, 84. But plaintiffs provide no information about, for example, "the way in which all of the[se] features are interrelated," "the method of making [them] work," and "how exactly the [architecture, logic, business rules, and database design] combine to form plaintiff[s'] trade secret." FXRobott LLC v. Noetiq Rsch. Inc., 2025 WL 1874888, at *11 (S.D.N.Y. July 8, 2025) (cleaned up). Because plaintiffs "fail[] to define the contours" of PowerMHS's architecture, logic, and design, "a court cannot determine what exactly [it] encompasses." Id. (internal quotation marks omitted). Plaintiffs fail to identify the trade secrets at issue with sufficient specificity to warrant preliminary injunctive relief.[2] See id. at *12.

**B. Irreparable Harm**

Plaintiffs have also failed to demonstrate that they would suffer irreparable harm absent a preliminary injunction. To satisfy that requirement, "plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and

[2] The Court expresses no opinion as to whether plaintiffs pleaded the trade secrets with sufficient specificity to survive a motion to dismiss, see SS&C Techs. Holdings, Inc., 2026 WL 3318407, because "[t]o establish a likelihood of success on the merits in support of a preliminary injunction, a [p]laintiff must clear a much higher hurdle than is required to defeat a motion to dismiss," Own Your Hunger LLC v. Linus Tech., Inc., 2026 WL 296592, at *10 (S.D.N.Y. Feb. 4, 2026) (internal quotation marks omitted).

one that cannot be remedied if a court waits until the end of trial to resolve the harm." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (cleaned up). "Irreparable injury is one that cannot be redressed through a monetary award," and thus, "[w]here money damages are adequate compensation[,] a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).

Plaintiffs assert two theories of irreparable harm. First, plaintiffs argue that they suffer actual or imminent injury from disclosure of their confidential information to MedImpact. See Mem. in Support at 23-24. But plaintiffs have offered no non-speculative evidence that defendants disclosed or will imminently disclose plaintiffs' confidential information. As discussed, plaintiffs say that public sources report that "MedImpact [ha]s obtain[ed] a . . . credit facility to finance the sale, suggesting that substantial diligence has already been completed" or "is on the cusp" of completion. Id. at 24. But speculation about the subject of any acquisition-related due diligence that has occurred or will be occurring is insufficient to demonstrate actual or imminent disclosure of plaintiffs' confidential information. See W. Publ'g Corp. v. Coiteux, 2017 WL 4339486, at *3 (S.D.N.Y. Aug. 28, 2017).

Second, plaintiffs aver and argued at oral argument that they will suffer irreparable "competitive harm" from a post-acquisition MCS-MedImpact using plaintiffs' trade secrets for its own pecuniary gain. See Dargati Decl. ¶¶ 22, 25-30. A court in this District analyzing whether competitive harm from post-merger use by a competitor of a plaintiff's trade secrets constitutes irreparable harm held that the competitive harm is "reasonably quantifiable." Nielsen Consumer LLC v. NPD Grp., 2023 WL 5534694, at *6 (S.D.N.Y. Aug. 28, 2023) (citing Faiveley Transp. Malmo AB, 559 F.3d at 119). Because an award of money damages would adequately remedy plaintiffs' asserted injury, plaintiffs have failed to demonstrate irreparable harm.

Plaintiffs also contend that the provision of the Perpetual Source Code Licensing Agreement stating that "any violation or threatened violation" would "cause [plaintiffs] irreparable injury," Compl. Ex A at 11, weighs in favor of finding irreparable harm, see Mem. in Support at 22-23. Although courts have found support for irreparable harm in these cases, see Cuesta Partners LLC v. Reingruber, 2026 WL 1971248, at *7 (S.D.N.Y. July 8, 2026), the provision "is insufficient, by itself, to satisfy [plaintiffs'] burden," Kim v. CIMG Inc., 2025 WL 833074, at *2 (S.D.N.Y. Feb. 13, 2025). "Because [plaintiffs] ha[ve] otherwise failed to provide any reason to believe that [they] will suffer irreparable harm in the absence of an

injunction, the provision cannot justify injunctive relief." W. Publ'g Corp., 2017 WL 4339486, at *4.

## III. Conclusion

For these reasons, the Court concludes that plaintiffs failed to meet the standard for granting preliminary injunctive relief. The Court thus reconfirms its November 6, 2026 "bottom-line" Order denying plaintiffs' motion for a preliminary injunction. See ECF No. 59. The remainder of the case will continue in accordance with the prior scheduling orders.

New York, NY
November 9, 2026

JED S. RAKOFF, U.S.D.J.